Dtjkfee, Judge,
delivered the opinion of the court:
This is a suit for breach of a contract dated July 16,1954, between Warren E. Avis, intervenor-plaintiff, and the Government under which the Government granted exclusive authority to Avis for two years to operate a “Rent-A-Car” business at the Washington National Airport. Avis agreed to pay I514 percent of the gross receipts of such operation that exceeded $200,000 a year, in addition to a specified monthly guarantee, and these payments were made throughout the two-year period of the contract. During this period, Avis assigned this contract to plaintiff, A.R.S. Inc. which licensed plaintiff, National Truck Rental Co. Inc., to operate as its agent under the contract. During most of this period, however, the Government was enjoined by United States District Court orders from interfering with similar operations at the airport by Hertz, a competitor of Avis. As a result, plaintiffs did not receive the exclusive authority granted by their contract.
The basic facts found by the Commissioner are not excepted to by either party, but defendant disagrees with the Commissioner’s summary and ultimate findings upon issues of fact.
The defendant contends that plaintiffs are collaterally estopped from asserting this claim because of a prior adjudication of the facts here involved before the United States District Court for the District of Columbia wherein, upon application of plaintiffs’ competitor, Hertz, the Government was enjoined from enforcing the exclusivity due plaintiffs under the Avis contract. Plaintiffs were not originally parties to that proceeding, but intervened. The District Court found, inter alia, that the intervenors had suffered and would continue to suffer irreparable damage, and that such damage was a result of interference in their operations by Hertz. The court enjoined Hertz from further solicitation *75 of business at the airport. This entire injunction proceeding did not in any way effect an adjudication of the contract or alleged breach thereof by the Government in issue in the present case. In fact, the interests of the Government, as defendant, and the plaintiffs as intervenors in the injunc-tional proceeding were the same. Furthermore, defendant has not pleaded estoppel or res judicata in defense, as required by Eule 16(b) of the Eules of this court. We conclude that plaintiffs are not collaterally estopped from maintaining this action.
The defendant also avers that even if it failed to perform its contract, it is not liable because performance was prevented by the District Court’s injunction. Nevertheless, the Government continued to accept payment each month under the contract, although plaintiffs objected to the interference in their operations by Hertz.
The Government received ten percent of Avis’ gross receipts under the previous 1951 contract, which was nonexclusive as to similar operations by other parties, and it was willing to renew this contract with Avis under the same terms in 1954. However, in the 1954 contract, the Government granted Avis an added right of exclusivity for his operations at the airport, in consideration of an added five and one:half percent of gross receipts. Under this second contract, plaintiffs paid the Government 15y2 percent of gross receipts of $407,779.49 over a two-year period plus monthly guarantee, in all amounting to $69,069.01. If the contract had been renewed on a non-exclusive basis at ten percent, as the Government had originally agreed, plaintiffs would have paid $40,777.95. The difference of $28,291.06 was paid by plaintiffs for complete exclusivity, as contemplated by the parties when the contract was drawn.
To the extent that plaintiffs paid for complete exclusivity, something they did not get, the Government has been unjustly enriched. Nevertheless, to the extent that plaintiffs’ competitor Hertz was prevented from solicitation of business and other activities at the airport, there was partial performance of the contract, and the Government has not been unjustly enriched thereby. We conclude that out of the total *76 payment of $28,291.06 fox’ exclusivity of operations, plaintiffs received partial exclusivity to tlie value of $13,000.00. The Government has been unjustly enriched by plaintiffs’ payment of the balance of $15,291.06.
Having concluded that plaintiffs have paid in excess of $15,000 in rental to the Government for an exclusive franchise which the Government failed, in violation of the contract, to provide, we must now consider whether plaintiffs are entitled to recover that portion of the excess rentals paid prior to the assignment from Avis to A.R.S. Trucking. The assignment instrument executed by Avis to Avis Rent-A-Car provides, in pertinent part, as follows:
AND, by this transfer I hereby release the United States of America from any obligations to me under said contract.
Provided, however, that this assignment and release shall be null and void unless and until it is accepted by Avis Rent-A-Car System, Inc. and approved by the United States of America, by the Director, Washington National Airport.
Plaintiff contends that the first paragraph set out above cannot be deemed to have released the Government from the claim presently before us because: (a) the release is invalid due to lack of consideration; (b) the Government was not a party to the assignment contract, and thus can claim no benefit from it; and (c) the burden of proving the validity and applicability of a release is on the defendant and defendant has failed to discharge this burden.
Although the original contract presently in issue made assignment of rights thereunder subject to approval by the Government, the Government was not a party to the assignment contract in which the quoted language, alleged to constitute the release, appears. Absent a showing of actual consideration from the Government to the assignor, Avis, the language of release would appear as nothing more than a gratuitous statement lacking in any semblance of mutuality of obligation, and thus unenforceable. The Government has not alleged or proven any consideration in support of the *77 alleged release. Nor has the Government alleged or proven that it placed reliance on the language in the assignment purporting to effect a release. It would certainly have been an easy matter to prove that absent that language, the Government would have exercised its authority under the original contract to disapprove the assignment, or that the Government in any way relied on that language in approving the assignment. Having failed to establish any consideration in support of the alleged release, we must conclude that it is unsupported, and thus unenforceable.
For the reasons stated judgment will be entered for plaintiffs and the intervenor in the sum of fifteen thousand two hundred ninety-one dollars and six cents ($15,291.06).
It is so ordered.
Daee, Senior District Judge, sitting by designation; Laba-moee, Judge/ Whitakee, Judge; and Jones, Chief Judge. concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Eichard Arens, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff A.E.S. Inc., formerly known as Avis Eent-A-Car System, Inc., is a corporation organized and existing under the laws of Delaware, with its principal place of business in Boston, Massachusetts.
2. The plaintiff National Truck Eental Co., Inc., is a corporation organized and existing under the laws of Maryland, with its principal place of business in Washington, D.C.
3. The plaintiff Warren E. Avis is a resident of Detroit, Michigan.
4. The Washington National Airport is owned by the defendant and managed by an Airport Director under the jurisdiction of the Civil Aeronautics Administration of the Department of Commerce.
5. This case involves a contract for the operation of a rent-a-car concession on the airport for a period (hereinafter re *78 ferred to as the second contract period) beginning July 16, 1954, and ending Julyl6, 1956.
6. In a contract dated June 16,1951, the defendant granted to the plaintiff Warren E. Avis “the right, power, privilege and authority to conduct and operate a £Eent A Car’ business or concession on the airport” for a period (hereinafter referred to as the first contract period) beginning June 16, 1951, and ending June 15, 1954, with an option on the part of the plaintiff Warren E. Avis “to renew this agreement for an additional period of two (2) years on terms to be mutually agreed upon by both parties.” The contract provided that the plaintiff Warren E. Avis was to pay the defendant 10 percent of the gross receipts with a minimum guarantee of $5,000 per annum. The first contract period was subsequently extended until July 15,1954.
7. Although the contract for the first contract period was non-exclusive, the defendant did not as a matter of policy enter into a contract with any other party for a rent-a-car concession on the airport during this period.
8. The actual operation of the rent-a-car concession during both the first and second contract periods was, with the consent of the defendant, performed by the plaintiff National Truck Eental Co., Inc. During the entire first contract period and until on or about April 27, 1955, of the second contract period, the plaintiff National Truck Eental Co., Inc., was the licensee of the plaintiff Warren E. Avis. Thereafter and until the end of the second contract period, the National Truck Eental Co., Inc., was the licensee of Avis Eent-A-Car System, Inc., which was the assignee of the plaintiff Warren E. Avis and which is now known as the plaintiff A.E.S. Inc.
9. During both the first and second contract periods the defendant furnished the plaintiff National Truck Eental Co., Inc., comiter space within the airport terminal building and parking spaces on airport property for the rental cars.
10. During the first contract period the gross receipts of the rent-a-car concession and the revenue to the Government were as follows:

*79

HERTZ OPERATIONS
11. Beginning in 1949 and continuing throughout both the first and second contract periods (1951-1956) a licensee of the Hertz Drive-Ur-Self System (hereinafter sometimes referred to as Hertz) without contractual arrangements with the defendant conducted rent-a-car operations at the airport. The evidence is not clear as to the time of inception of each phase of the Hertz operations, but the evidence does reveal (1) a progressive increase in Hertz business and (2) variations in scope and intensity of the operations depend *80 ing upon circumstances hereafter set forth. These Hertz operations consisted of the following:
(a) Hertz maintained a pool of rental cars in a public parking lot operated by a concessionaire on airport property. Hertz paid the same parking fees charged the public. Hertz employees, in uniform prominently bearing the Hertz insignia and with clipboards containing blank car rental agreements, walked around within the airport terminal building. Customers were signed up on airport property by the Hertz employees and escorted to the public parking lot where cars were delivered to them.
(b) Upon arrival of a plane bearing an incoming passenger who had an advance reservation for a Hertz car, a Hertz employee would go to the counter of the appropriate airline and request that the incoming passenger be paged on the airport public address system. After the incoming passenger was paged, he would be met by the Hertz employee who would complete the formalities of the rental agreement in the lobby of the airport terminal building and escort the passenger to the public parking lot where a car would be delivered to him.
(c) Hertz employees also checked in at the airport cars which had been rented by customers who were returning them. Sometimes customers would leave car keys at an air line ticket counter where they would be picked up later by a Hertz employee.
12. On several occasions during the first contract period the plaintiff Warren E. Avis or the plaintiff National Truck Rental Co., Inc., complained about Hertz activities at the airport to the Airport Director who warned the Hertz people that they were violating an airport regulation which provided that “no person shall engage in any business or commercial activity of any nature whatsoever on the airport except with the approval of the Administrator or Airport Director, and under such terms and conditions as may be prescribed.”[1] The Hertz activities, however, continued on the airport.
*81 NEGOTIATIONS FOR SECOND CONTRACT
13. A letter, dated March 15, 1954, addressed to the Airport Director and signed Harry Friend, Hertz Rent-A-Car System, Licensee, reads in part as follows:
As the Washington Licensee of Hertz Rent-A-Car System, I hereby submit the following proposal for a non-exclusive rent-a-car concession at the Washington National Airport. In return for such a concession and on the assumption that you are going to grant more than one rent-a-car concession at the Airport after June 15, 1954, I will guarantee to the Government payment of any amount you determine to be proper up to $12,-000.00 annually plus ten percent of the gross annual revenue of the concession in excess of ten times the annual guarantee. Although I am entirely willing to guarantee the payment of $12,000.00 annually plus ten percent of gross annual revenue in excess of $120,000.00,1 am not making any proposal in that form because I would not want my offer to appear to be an attempt to “freeze out” any other bidder for a similar non-exclusive concession.
The above proposal is made on the assumption that you will permit more than one rent-a-car concession to operate at the Airport after June 15,1954. Should you decide to permit only one rent-a-car concession to operate at the Airport after June 15,1954,1 would, of course, be willing to make a proposal on that basis.
14. A letter on the letterhead of Avis Rent-A-Car System, dated April 23,1954, addressed to the Airport Director and signed Warren E. Avis, President, reads in part as follows:
It is our desire to continue our operation at the Washington National Airport upon the same terms and conditions that we have operated for the past five (5) years.
It is my understanding that we have been very satisfactory tenants, and, as we have pointed out repeatedly, we would have been able to do more volume if we had been allowed to put in adequate counter space and store more automobiles. The condition of congestion around the airport has made it impossible to grant us adequate operating space.
Even with the handicap of inadequate operating space, we are prepared to have 150 to 200 cars set aside in downtown parking areas for airport use, at any time that the volume is sufficiently great to warrant their *82 use. And, if it is at all possible, we would definitely prefer having increased counter space in order to merchandise properly and to develop greater business at the Washington National Airport.
* ‡ $ $ $
I would like to renew my contract for the rent-a-car concession on the same basis for another three years. We would be willing to guarantee the Washington National Airport a minimum rental of $12,000 per year. This is to show our good faith and continued expansion at the airport, and the amount of business that we know we will do in the coming period.
15. The body of a letter, dated April 26, 1954, addressed to Mr. Warren E. Avis, President, Avis Eent-A-Car System, from the Airport Director, reads as follows:
The terms of your proposal are not entirely clear in that you indicate you would like to renew the contract on the same basis for another three years and follow that statement with one which states you would be willing to guarantee a minimum rental of $12,000.00 per year.
It will be appreciated if you will clarify your proposal by stating the percentage as well as the minimum guarantee.
16. The body of a letter, dated April 30, 1954, addressed to the Airport Director and signed Warren E. Avis reads as f ollows:
In reference to your letter of April 26,1954 concerning the renewal of our contract at the Washington National Airport we wish to make the following clarification.
We would like to renew our contract for three years as before with a guarantee of 10% of the gross receipts. We are likewise guaranteeing a minimum of $12,000 rental for each year of the contract.
17. Subsequent to the exchange of the foregoing letters, the Airport Director met with the plaintiff Warren E. Avis and the president of the plaintiff National Truck Rental Co., Inc., at which time the Airport Director stated that “the Government would be satisfied with 10 percent and a $12,000 minimum, guarantee on a non-exclusive basis,” but both the plaintiff Warren E. Avis and the president of the plaintiff National Truck Rental Co., Inc., “wanted something put in *83 the contract that would obligate the Government to stop Hertz from operating from the airport.”
18. Following the meeting with the plaintiff Warren E. Avis and the president of the plaintiff National Truck Rental Co., Inc., the defendant considered that it might be to the better interest of the Government to have one exclusive rent-a-car operator at the airport. Hertz was then requested by the defendant to submit a proposal for the airport rent-a-car concession on an exclusive basis. Hertz made a proposal to pay the defendant a minimum annual guarantee of $81,500, or 15% percent of the gross receipts in excess of $200,000 whichever was the greater.
19. Because of the renewal option which the plaintiff Warren E. Avis had in the contract for the first contract period, the defendant offered the plaintiff Warren E. Avis the opportunity to match the proposal of Hertz. The plaintiff Warren E. Avis and the president of the plaintiff National Truck Rental Co., Inc., indicated willingness to match the proposal of Hertz, because they wanted to eliminate the previous activities of Hertz at the airport and wanted to operate a rent-a-car service at the airport to the exclusion of all others in that business. The plaintiff Warren E. Avis was also very much concerned that the defendant might grant Hertz a rent-a-car concession under either a two-concession arrangement or on an exclusive basis; this concern by the plaintiff Warren E. Avis was a substantial factor in the negotiations between the defendant and himself.
20. The Airport Director was of the opinion and he indicated to the plaintiff Warren E. Avis and the president of the plaintiff National Truck Rental Co., Inc., during the contract negotiations that the Government could and would prevent all the Hertz operations at the airport, including the advance reservation operation, if an exclusive contract should be entered into between the defendant and the plaintiff Warren E. Avis.
SECOND CONTRACT
21. A contract, signed prior to July 16,1954, but “made as of the 16th day of July 1954” between the defendant and the plaintiff Warren E. Avis (referred to in the contract as *84 Government and Contractor, respectively) reads in pertinent part as follows:
Article I — Rights of Contractor
The Government hereby grants unto the Contractor, subject to all the terms, conditions, and covenants of this agreement, the exclusive right, power, privilege and authority to conduct and operate a “Rent-a-Car” business or concession on the Airport. The Government agrees that it will not during the term of this agreement grant to anyone else, other than the Contractor, rights similar to these granted herein for the operation of a “Rent-a-Car” business or concession at the Airport. The Government will not permit any rental of driverless cars on the Airport except by the Contractor during the term of this agreement.
The Government hereby grants unto the contractor the right to occupy and use the space located at the North main lobby entrance to the Terminal building, and the parking spaces and garage area now assigned to the Contractor and used by him for the term of this Agreement and shall endeavor to locate for the contractor additional or more suitable counter, parking and garage space.
Article II — Term of Agreement
The Contractor shall have and exercise the exclusive right, power, privilege and authority granted in Article I hereof for a period beginning July 16,1954, and ending July 15,1956, both dates inclusive.
Article III — Charges and Fees
1. The. Contractor agrees to pay the Government a minimum guarantee of $31,500 per contract year, prorated on a monthly basis, and payable in advance on the 16th day of each month during the term hereof.
2. In addition to the above charges and fees the contractor agrees to pay the Government charges and fees equal to fifteen and one-half per cent (15%%) of the gross receipts derived by the Contractor during the term of this agreement from his operation of a “Rent-a-Car” business or concession at the Airport that exceed $200,-000. per contract year. * * *
22. Under date of July 16, 1954, the plaintiff National Truck Rental Co., Inc., became, with the consent of the de *85 fendant, tbe sole agent and licensee of tbe plaintiff Warren E. Avis to operate tbe rent-a-car concession on tbe airport and to discharge the contractor’s obligations to tbe Government under the contract between the defendant and the plaintiff Warren E. Avis.
23. Tbe plaintiff National Truck Rental Co., Inc., constructed facilities on the airport and engaged and maintained a staff thereon for twenty-four hours each day during the entire second contract period to render services to airport passengers in connection with the rental of driverless cars.
24. Beginning with the commencement of the second contract period (July 16, 1954) the Hertz operations at the airport increased in scope and intensity, and the president of the plaintiff National Truck Rental Co., Inc., made frequent complaint to the defendant about such operations.
25. Under date of July 13, 1954, there was issued by the defendant the following statement:
STATEMENT ON RENT-A-CAR CONCESSION
Regulations of the Administrator of Civil Aeronautics, Part 510, Rules of Washington National Airport, promulgated pursuant to the authority contained in Section 2, of Public Law No. 674, 76th Congress, Act of June 29,1940, 54 Stat. 688, provides in Section 570-84 that, “No person shall engage in any business or commercial activity of any nature whatsoever on the Airport except with the approval of the Administrator or Airport Director, and under such terms and conditions as may be prescribed.”
Further, Section 570.85 provides that, “(a) The soliciting of fares, alms or funds for any purpose on the Airport without the permission of the Airport Director is prohibited, (b) No sale of any kind shall be made, nor admission fee charged, nor article exposed for sale on the Airport by any person without permission from the Airport Director unless permitted by reason of contractual relations between such person and the United States Government.”
Section 570.86 provides, that, “No person shall post, distribute or display signs, advertisements, circulars or any other printed or written matter at the Airport except with the approval of the Airport Director and in such manner as he may prescribe unless permitted by *86 reason of contractual relations between such person and the United States Government.”
By contract dated as of July 16, 1954, and effective on that date, the Government grants to Warren E. Avis, the “exclusive right, power, privilege and authority to conduct and operate a ‘Rent-A-Car’ business or concession on the Airport. The Government will not permit any rental of driverless cars on the Airport except by the contractor during the term of this Agreement.”
In view of the above-quoted Regulations and contract provisions, the signing of contracts on the Airport by Rent-A-Car companies other than Avis, the wearing or display of advertisements or signs on automobiles, clothing, or in any other manner, of rent-a-car companies other than Avis, the soliciting of rent-a-car business other than for the Avis Company, and any other act or combination of acts, constituting the operation of a rent-a-car business or the advertising of a rent-a-car business on the Airport, other than that of Avis, are, therefore, forbidden and action will be taken by the Government to prosecute any such acts to the full extent of the law.
However, the Government will permit, until further notice, rent-a-car operators other than Avis, to arrange for the pick-up of customers of any such operators at the Airport so that such customers may avail themselves of rent-a-cars of operators other than Avis under the following conditions:
(1) The customers to be picked up at the Airport have either made a binding contract with the rent-a-car company at a place other than the Washington National Airport or have made a reservation, prior to their arrival at the Airport, with the rent-a-car company.
(2) In the event a customer to be picked up at the Airport has a reservation and not a binding contract, such customer must be taken from the Airport before the contract for the rental of the car is executed.
(3) No loitering or waiting in or about the Airport by agents or drivers of rent-a-car operators will be permitted except at a place or places designated by the Airport Director for such purposes, and then only for reasonable periods of time.
Washington National Airport
7/13/’54
26. When the president of the plaintiff National Truck Rental Co., Inc., saw the statement set forth in paragraph 25, supra, he complained to the defendant that he considered the statement to be “a deliberate violation by the Government *87 of the terms of the contract” under which he was operating as the exclusive agent for Warren E. Avis.
27. The body of a letter, dated July 28,1954, to the Hertz licensee from the Airport Director reads as follows:
July 23,1954.
Mr. Haeey Friend
Hertz Bent-A-Oar System, Licensee

1319-21L Street. N.W.

Washington, D.O.
Dear Mr. Friend: Eeference is made to your letter dated July 22,1954, in which you made seven suggestions concerning the conditions to govern and control the use of the Airport by rent-a-car businesses other than the Avis Company which was recently granted the right to operate at this Airport.
The only thing that your company would not be allowed to do, if your suggestions were adopted, would be to solicit business on the Airport. In view of our regulations and in view of our contractual obligations with Avis, we cannot accept, in toto, your suggestions.
We have offered to allow your agent access to the Airport and the Terminal Building under certain conditions as explained to your Attorney, Mr. Dempsey. We expected a request from you for space to be assigned by the Airport Director in order that your agent could meet your prospective customers. More than a week has passed since this offer was made and I have been advised by Airport Police that your agents have been signing contracts, delivering cars; accepting money for their rental, and performing various and sundry other acts that constitute the transaction of business on the Airport and a violation of our regulations.
My specific answers to your suggestions are as follows:
(1) Your agent will only be permitted to occupy space designated for that purpose. He will not be allowed to await the arrival of a prospective customer at airline ticket counters. You are, no doubt, aware of the congestion problem we have in the main lobby where the ticket counters are located. This is only one of many reasons why we cannot permit your agent this liberty. Even Avis, our own concessionaire, does not have the right.
(2) The procedures for the use of the public address system at the Airport have been established by a joint agreement between the carriers and Airport Management. Any use by the employees of the carriers of the public address system must be in conformity with these *88 procedures. Any violation of tliese procedures by the carriers is a matter between such carriers and the Airport Management. No concessionaire on the Airport other than the carriers is allowed to use the public address system. This rule also will apply to your operations.
(8) Not only will your agent be permitted to wear a cap bearing the Hertz label for identification by airline passengers, but we consider this necessary and we are, therefore, making it mandatory.
(4) Under no circumstances will your agent be permitted to sign a contract for the rental of your cars on the Airport.
(5) If a person on the Airport makes a reservation with your company after his arrival at the Airport, we shall consider such a reservation as being in the same category as one made by him at some other location and you will be allowed to pick up such a customer in the same manner.
(6) If the customer legally parks your rental car on the Airport and turns the keys over to your agent, we have no objection to such a procedure. However, the signing of contracts, payment of fees and other acts constituting the consummation of a business transaction by your agents, are forbidden.
(7) Your seventh suggestion to the effect that your employees will not solicit business on the Airport meets with our approval, however, delivery of your rental cars must be made in conformity with our previously stated conditions.
Once again, the exact limitations on your operations at the Airport will be as follows:
1. The customers to be picked up at the Airport have either made a binding contract with the rent-a-car company at a place other than the Washington National Airport or have made a reservation, prior to their arrival at the Airport, with the rent-a-car company.
2. In the event a customer to be picked up at the Airport has a reservation and not a binding contract, such customer must be taken from the Airport before the contract for the rental of the oar is executed.
3. No loitering or waiting in or about the Airport by agents or drivers of rent-a-car operators will be permitted except at a place or places designated by the Airport Director for such purposes, and then only for reasonable periods of time.
In addition to the three conditions stated above, and until further notice, your agent will be allowed to wear *89 a cap with, a Hertz name on it for identification purposes only.
I must again ask you to restrain your agents from violating our regulations, otherwise, I shall be required to prosecute them to the full extent of the law.
Please inform me whether you desire to have space assigned where your agent may await your customers.
Very truly yours,
B. H. Geieein, Director,

Washington National Airport.

BHG: mpl
28. The Hertz licensee made no response to the letter referred to in paragraph 27, supra, and refused to adhere to the limitations contained therein.
ARREST OE HERTZ EMPLOYEES — ACQUITTAL
29. Following the refusal of the Hertz licensee to adhere to the limitations contained in the letter referred to in paragraph 27, supra, airport police, under the direction of the Airport Director, on three separate occasions arrested Hertz employees during August 1954 for violating an airport-regulation (set forth in paragraph 12, supra) against engaging in business on the airport, except with approval of and under terms and conditions prescribed by the authorities. One of these Hertz employees was brought to trial in the United States District Court for the Eastern District of Virginia. The opinion of the court acquitting the Hertz employee reads in part as follows:[2]
Charged with the violation of a Washington National Airport regulation forbidding the conduct of business there without the approval of the Administrator of Civil Aeronautics or Airport Director, the defendant has waived a jury trial, admitted the acts laid to him in the information, and bases his plea of not guilty upon the inapplicability of the regulation to his conduct, or if applicable, then upon the invalidity of the regulation.
❖ * * * *
The transgression of which the defendant is accused consists of this. He is employed as a deliveryman for the Washington, D.C. representative of the Hertz Kent-a-Car System; he drove one of his employer’s rental cars *90 to the airport; in his pocket he had an agreement, to be signed by an incoming plane passenger, for the rental and immediate use of the car by the passenger without a driver; he was delivering the car pursuant to a previous order placed by the passenger before he emplaned; he paged the passenger over a public address system which was available to all persons meeting an arrival in the airport; locating his lessee, he had him sign the agreement in the lobby of the airport and take the car; but he had not obtained the approval of the Administrator or Director for this activity. Defendant’s arrest followed.
The Court is of the opinion that this transaction, either as a single instance or one of many in a regular course of conduct, is not within the bar of the regulation. Though broad in its terms — “any business or commercial activity of any nature” — it is nevertheless limited by its purpose. The regulation’s sole intendment is to give the Administrator or Director supervision and control of such mercantile engagements as would require occupancy of space or use of facilities at the airport in a manner more burdensome than, or otherwise different from, that accorded to a passenger. It does not seek to restrict a traveler in his personal rights. Surely, e.g., a passenger may without offense to the regulation arrange to be met by someone of his selection to transport him from the airport. His selectee may certainly comply without overstepping his privileges at the airport. What has occurred here is no more than that.
The actual as well as the posed instance examples a use of the airport by an individual in the exercise of a right of use personal to him as a passenger, a right belonging to every passenger. The regulation does not propose to outlaw the enjoyment of that right, if indeed it could do so. It purposes the control of such uses of the airport as might be allotted to concessionaires. This would include a right of physical occupancy, and an exercise of functions, on the airport far in excess, though not in curtailment, of the rights possesed by an individual when a passenger. The rights of the concessionaires are to cater to all passengers; while the rights of the passenger are to provide only for himself. Again, the passenger’s rights in the airport are appurtenant to him; the rights of use of the concessionaire are appurtenant to the airport. The regulation does not purport to strip the passenger of his personal rights. The defendant’s acts were in the performance of a personal *91 right of and for a passenger. This was not an affront to the regulation. (Citing cases.)
As the conduct of the defendant was not within the aim or ambit of the regulation as now written, the question whether or not it could be prohibited is presently academic.
CIVIL ACTIONS
30. On September 3,1954, Hertz brought an action against the Government in the United States District Court for the District of Columbia (a) to nullify the contract of July 16, 1954, between the Government and the plaintiff Warren B. Avis, or to abrogate it to the extent that it barred Hertz from delivering driverless cars to incoming air passengers pursuant to reservations made elsewhere; (b) for a writ of mandamus to compel the Government to relet the rent-a-car concession; and (c) for an injunction against interference by the Government with Hertz delivery of driverless cars to his customers at the airport.
31. On the same date, September 3, 1954, pursuant to a motion filed by Hertz, the same court issued a temporary order restraining the defendant:
* * * from in any way or manner interfering with plaintiff’s fulfillment of reservations or arrangements for driverl’ess Hertz cars made elsewhere than at the Washington National Airport, including but not limited to restraining defendants or their officers, agents, or employees (a) from arresting plaintiff’s drivers when they seek to deliver cars at the _ Washington National Airport in accord with such prior reservations or arrangements, and to execute the documents and make the transactions necessary to complete such prior reservations or arrangements; (b) from directing, requesting or in any way seeking to influence the airlines to refrain from cooperating with plaintiff in his attempt to give proper service to his customers arriving at the Washington National Airport or to refrain from paging Hertz customers who have reserved cars at their points of origin,
32. From September 3,1954, until after the expiration of the second contract period (July 15, 1956), the defendant was under restraining orders similar in terms to the order set forth in paragraph 31, su/pra. During this period the defendant desisted from attempting to interfere with the *92 Hertz operations at tbe airport which increased in scope and intensity and were the subject of complaint to the defendant by the president of the plaintiff National Truck Rental Co., Inc.
33. The plaintiffs duly fulfilled all of the obligations required of them by the contract of July 16, 1954. Throughout the entire second contract period the plaintiff National Truck Rental Co., Inc., made regular monthly payments to the defendant in accordance with the rent-a-car concession contract, although it believed that it was not getting what it had bargained for under the contract. At no time during the second contract period did any plaintiff request the Government to make an adjustment in the amount paid to the Government under the contract.
34. During the second contract period the gross receipts of the rent-a-car concession and the revenue to the Government were as follows:

*93 35. On September 30, 1954, the District Court dismissed the complaint in the action referred to in paragraph 30, supra, on the ground that Hertz had no standing to sue, but Hertz appealed.
36. On March IT, 1955, the United States Court of Appeals, District of Columbia Circuit, affirmed the action of the District Court with respect to the dismissal of the complaint regarding (a) and (b) of the Hertz action (referred to in paragraph 30, supra), but reversed and remanded the case to the District Court for trial to determine whether the Government was applying its regulations for the administration of the airport in a capricious and arbitrary manner against Hertz, and whether the acts performed by Hertz constituted “the rental of driverless cars on the Airport” which the Government obligated itself toward Warren E. Avis to prevent.
37. A document, dated for signatures April 23, 1955, and April 27th, 1955, respectively, reads as follows:

Assignment

For value received, I hereby sell, assign and transfer to Avis Rent-A-Car System, Inc. of 57_ Columbus Avenue, Boston, Massachusetts all right, title and interest that I have under contract bearing No. Cca-na-858 dated July 16, 1954, by and between the United States of America and myself covering the Driverless-Car Concession at the Washington National Airport, Washington, D.C.
AND, by this transfer I hereby release the United States of America from any obligations to me under said contract.
Provided however, that this assignment and release shall be null and void unless and until it is accepted by Avis Rent-A-Car System, Inc. and approved by the United States of America, by the Director, Washington National Airport.
Dated this 23rd day of April, 1955.
(S) Warren E. Avis
Warren E. Avis
Avis Rent-A-Car System, Inc. hereby accepts the above assignment as transferee of the obligations of Warren E. Avis under the above-mentioned contract and I agree to discharge those obligations as fully and com *94 pletely as if I were the original contractor with the United States of America.
Dated this 27th day of April, 1955.
(S) E. GeORGE IVERSON, V.P.
Avis Bent-A-Oar By stem,, Ine.
Attest:
James Vorenberg,

AssH Beey.

Approved:
United States of America.
By (S) B. H. Griffin,
Director, Washington National Airport.
The Avis Kent-A-Car System, Inc., is now known as the plaintiff A. E. S. Inc.
38. A letter, dated April 27,1955, addressed to the president of the plaintiff National Truck Eental Co., Inc., reads in part as follows:
2. We hereby appoint you to act as our agent under the contract entered into July 16, 1954; between Warren E. Avis and the United States of America for the rent-a-car concession at the Washington National Airport (hereinafter called the “Airport Contract” and the “Airport”), which contract has been assigned by said Warren E. Avis to our company. You are authorized to exercise all rights granted us by the Airport Contract and to do any act which we are authorized or required to do by said contract. You assume all our liabilities under said contract and agree to make all payments, file all reports and do all other acts required of us thereunder. You will hold us harmless for any loss or liability which may be imposed upon us in connection with the Airport Contract for as long as you continue to act as our agent hereunder. Our appointment of you as agent under the terms of this paragraph shall continue as long as the Airport Contract is in effect.
Sj5 5^5 y
4. You will pay to us 40% of all operating profits (hereinafter called “profits”) derived from your operations both at the Airport and at downtown locations in the City of Washington, to the extent such profits are earned at a time when the Airport Contract or any contract which you at any time hold for the rent-a-car concession at said Airport is in effect. * * *
*95 10. This contract shall be of a continuing nature, and shall become effective when signed by both parties.
If the foregoing correctly sets forth your understanding of the agreement between us, please so indicate by signing this letter in the place provided below.
Avis Rent-A-Car System, Inc.
By (S) E. George Iversen, Y.P.

April 27,1955.

Accepted:
National Truck Rental Co., Inc.
(S) By Frank J. Mas, Jr.

Pres.

April 28,1955.

39. In all material respects the actual operation of the rent-a-car concession at the airport by the plaintiff National Truck Rental Co., Inc., was the same after April 27,1955, as before.
40. On June 28,1955, Avis Rent-A-Car System, Inc., (now known as the plaintiff A.R.S. Inc.) and the plaintiff National Truck Rental Co., Inc., filed (a) a motion to intervene in the action brought by Hertz (referred to in paragraph 30, supra) alleging “that the representation of their interest by existing parties is inadequate and they will be bound by a judgment in the action and that they are so situated as to be adversely affected by the subject matter of the suit and that applicants’ claim and the main action have a question of law or fact in common,” and (b) an answer and counterclaim in the aforesaid action, alleging that the acts of Hertz violated their property and contract rights under the concession agreement and that the Court’s temporary restraining order against the Government violated their exclusive property and contract rights. The intervenors moved the Court to dissolve the temporary restraining order against the defendant and for a preliminary injunction enjoining Hertz from operating a business of renting driverless cars at the Airport.
41. On August 11, 1955, the United States District Court for the District of Columbia denied the intervenors’ motion for a preliminary injunction and ordered the pending case to be brought to trial expeditiously.
*96 42. Under date of November 8, 1955, the United States District Court issued the following Statement of Issues, Findings of Fact and Conclusions of Law:
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Action No. 3752-54
Harry Friend, Doing Business as Hertz Driv-ur-Self System, Licensee, plaintiff vs. Frederick B. Lee, et al., defendants and Avis Rent-A-Car System, et al., intervenors
Statement of Issues, Findings of Fact and Conclusions of Lem
The issues for determination by the Court in the cause of action between Plaintiff and Defendants are set out in the decision of the United States Court of Appeals for the District of Columbia in the case of Friend v. Lee, 221 F. 2d 96. Said issues are as follows:
THE ISSUES BETWEEN PLAINTIFF AND DEFENDANTS
1. Do the acts performed by the Plaintiff and his customers in effecting the delivery of the car constitute the “rental of driverless cars on the Airport” which Defendants have obligated themselves toward Avis (In-tervenor) to prevent? (Footnote 7, pp. 101-2)
2. Are the Defendants interpreting and applying the regulations adopted for the administration of the Air port in a capricious and arbitrary manner which prevents the Plaintiff from using the public facilities of the Airport in ways which should be open to any citizen? (Page 101)
3(a) Is Plaintiff being subjected to unreasonable restrictions in the delivery of driverless cars to customers at the Airport? (Page 102)
3 (b) Are the Defendants reasonable in the exercise in relation to the Plaintiff, of their broad powers in relation to automobile and personal traffic at the Airport ? (Footnote 7, p. 102)
*97 The Issues between Intervenors and Plaintiff result from the allegations set out in Intervenors Counterclaim.
THE issues BETWEEN INTERVENORS AND PLAINTIFF
1. Has Plaintiff, acting with the full knowledge of the exclusive rights of Avis and National Truck Rental Inc., Intervenors, to operate the only driverless car rental business at the Washington National Airport under exclusive concession agreement, interfered with the contract and property rights of Avis, Assignor, on the premises of the Airport for the purpose of operating a driverless rent-a-car business?
2. Have the Intervenors suffered, are they now suffering and will they suffer in the future, irreparable damage and loss of reputation and good will for which there is no remedy at law by reason of the actions of the Plaintiff referred to in Issue No. 1 between Intervenors and Plaintiff ?
FINDINGS OF FACT
Pursuant to Rule 52 of the Federal Rules of Civil Procedure the Court makes the following findings of fact:
FINDINGS OF FACT ON THE ISSUES BETWEEN PLAINTIFF AND DEFENDANTS AS ABOVE SET FORTH AND NUMBERED UNDER CAPTION “THE ISSUES BETWEEN PLAINTIFF AND defendants”
1. THE COURT FINDS in the negative on the question involved in Issue No. 1, except if and when the delivery of driverless cars on the Airport involves, is associated with or is accompanied by the following: (1) interference by Plaintiff, or any of his agents or representatives, with the conduct of the business of the Washington Airport, or of any Air Line or of any concessionaire on said Airport or of any customers ox such Air Line or of any concessionaire on said Airport or of any customers of such Air Line or of such concessionaire, by causing unusual congestion or delay to said Airport, to said Air Line, to said Concessionaire, or to any customer or customers thereof, as a result of the use of any facility or facilities of the Washington Airport, including roadways, parking spaces and spaces set aside for the loading ana unloading of passengers, respectively into and from automobiles and for the loading and unloading *98 of baggage, respectively into and from, automobiles and trucks, or as a result of the use by Plaintiff or any of his agents or representatives of any facility or facilities such as counters, of any Air Line or of any concessionaire on the Washington Airport; or (2) interference by Plaintiff, or any of his agents or representatives, with the conduct of the business of the Washington Airport as a result of the execution or delivery of papers by Plaintiff’s agents to Plaintiff’s customers or the payment or receipt of money, respectively to or by Plaintiff’s agents incident to the delivery or return delivery of driverless automobiles, or as a result of the ascertainment of the mileage registration on the speedometers or of the examination of spare tires on any of Plaintiff’s drivei’less automobiles, incident to said delivery or return of said automobiles.
2. THE COURT FINDS in the affirmative as to the question involved in Issue No. 2, subject to the same exceptions as are set forth in Finding of Fact No. 1, supra.
3(a) THE COURT FINDS in the affirmative as to the question involved in Issue No. 3(a), subject to the same exceptions as are set forth in Finding of Fact No. 1, supra.
3 (b) THE COURT FINDS in the negative as to the question involved in Issue No. 3(b), subject to the same exceptions as are set forth in Finding of Fact No. 1, supra.
FINDINGS OF FACT ON THE ISSUES BETWEEN INTERVENORS AND PLAINTIFF
1. THE COURT FINDS that the evidence establishes that the Plaintiff has solicited drive-yourself automobile rental business on the Washington Airport and that in that manner and to that extent Plaintiff has interfered with the contract and property rights of Inter-venors on the premises of the Airport for the purpose of operating a driverless rent-a-car business.
2. THE COURT FINDS in the affirmative as to the question involved in Issue No. 2 'between Intervenors and Plaintiff.
CONCLUSIONS OF LAW
THE COURT CONCLUDES AS A MATTER OF LAW, upon the basis of the above Findings of Fact in relation to the issues between Plaintiff and Defendants, that Plaintiff has suffered, is suffering now, and will *99 continue to suffer irreparable damage for which there exists no adequate remedy at law and that Plaintiff is entitled to have Defendants permanently enjoined against the continuance of the acts and things on the part of Defendants which are referred to in the Court’s Findings of Fact on the issues between Plaintiff and Defendants, subject to the exceptions set forth in said Findings of Fact.
THE COURT FURTHER CONCLUDES AS A MATTER OF LAW, upon the basis of the above Findings of Fact in relation to the issues between the Inter-venors and Plaintiff, that the Intervenors have suffered, are suffering now and will suffer in the future irreparable damage and loss of reputation and good will and that Intervenors are entitled to have Plaintiff permanently enjoined against the continuance of the acts and things on the part of Plaintiff which are referred to in the Court’s Findings of Fact on the issues between In-tervenors and Plaintiff.
(S) Charles F. McLaughlin,

Judge.

43. On the same date, November 8, 1955, the same court issued an order in the case, the text of which reads as follows:
The Court having heard the testimony and having fully considered said testimony and the evidence adduced in court, including all exhibits and stipulations introduced by Plaintiff, Defendants and Intervenors, and the Court having heard and considered arguments of counsel and having made Findings of Fact and Conclusions of Law based thereon, and being fully advised in the premises,
IT IS' ORDERED BY THE COURT THAT DEFENDANTS BE AND SAME ARE HEREWITH AND HEREBY PERMANENTLY ENJOINED from interfering with Plaintiff in the delivery of driver-less cars to the Washington Airport except if and when sudi delivery of driverless cars to said Airport involves, is associated with or is accompanied by the following: (1) interference by Plaintiff, or any of his agents or representatives, with the conduct of the business of the Washington Airport, or of any Air Line or of any Concessionaire on said Airport or of any customers of such Air Line or of such concessionaire, by causing unusual congestion or delay to said Airport, to said Air Line, to said concessionaire, or to any customer or customers thereof, as a result of the use by Plaintiff, or any of his *100 agents or representatives, of any facility or facilities of the Washington Airport,_ including roadways, parking spaces and spaces set aside for the loading and unloading of passengers, respectively into and from automobiles and for the loading and unloading of baggage, respectively into and from automobiles and trucks, or as a result of the use by Plaintiff, or any of his agents or representatives, of any facility or facilities, such as counters, of any Air Line or of any concessionaire on the Washington Airport or, (2) interference, by Plaintiff or any of his agents or representatives, with the conduct of the business of the Washington Airport as a result of the execution or delivery of papers by Plaintiff’s agents to Plaintiff’s customers or the payment or receipt of money, respectively to or by Plaintiff’s agents or representatives incident to the delivery or return of driverless automobiles, or as a result of the ascertainment of the mileage registration on the speedometers or of the examination of spare tires on any of the Plaintiff’s driverless automobiles, incident to said delivery or return of said automobiles.
IT IS FURTHER ORDERED BY THE COURT THAT PLAINTIFF IS HEREWITH AND HEREBY PERMANENTLY ENJOINED FROM solicitation, by Plaintiff or any of his agents or representatives, of drive-yourself automobile rental business on the Washington Airport or the performance of any acts or the doing of any things, including using or obtaining the use of the loud speaker system on the Washington Airport,, to further or effectuate the said solicitation of said business by Plaintiff on the Washington Airport.
The within order entered this 8th day of November, 1955.
Charles F. McLaughlin,

Judge.

44. Following the order of November 8,1955, of the United States District Court, all parties appealed to the United States Circuit Court of Appeals. The appeal was pending at the expiration of the second contract period (July 15, 1956) and was dismissed as moot by stipulation of the parties.
THIRD CONTRACT
45. At the expiration of the second contract period, on July 15, 1956, the plaintiff National Truck Rental Co., Inc., and Hertz each entered into a nonexclusive contract with the *101 defendant to operate for a period of five years rent-a-car service at the airport.
46. At the time of the execution of the contract between the plaintiff National Truck Eental Co., Inc., and the defendant, it was recognized by the parties that because there would be two concessionaires furnishing the same services, the potential volume of business of each would be less, and therefore the amount of compensation from each to the Government should be less. Accordingly, the contracts, which were indentical in all material respects, each provided for a minimum guarantee to the defendant of $24,000 annually, plus 10 percent of the gross receipts over $200,000 to and including $275,000; 11 percent of the gross receipts over $275,-000 to and including $350,000; and 12 percent of the gross receipts exceeding $350,000.
47. The gross receipts of the plaintiff National Truck Eental Co., Inc., and the revenue it paid to the Government under its contract of July 16, 1956, are as follows:

SUMMARY AND ULTIMATE FINDINGS
48.In a contract dated July 16, 1954, the defendant granted to the plaintiff Warren E. Avis the exclusive right to operate a rent-a-car concession at the airport and obligated itself not to permit any rental of driverless cars on the air *102 port except by tbe plaintiff Warren E. Avis. It was the intention of the parties to the contract that the Hertz rent-a-car operations at the airport, including the Hertz advance reservation operations, would be eliminated.
49. Prior to the execution of the contract, dated July 16, 1954, the plaintiff Warren E. Avis had a nonexclusive contract to operate a rent-a-car concession at the airport for which the defendant received 10 percent of the gross receipts. A higher rate of return to the defendant was agreed upon in the July 16,1954, contract because it provided exclusivity to the plaintiff Warren E. Avis.
50. The plaintiffs did not receive the exclusive right, pursuant to the contract, to operate a rent-a-car concession at the airport, and the defendant failed to discharge its contractual obligation not to permit any rental of driverless cars on the airport except by the plaintiff Warren E. Avis.
51. The plaintiffs duly fulfilled all of the obligations required of them by the contract dated July 16, 1954. They complained to the defendant about the Hertz rent-a-car operations at the airport, but did not request an adjustment in the amount paid to the defendant.
52. The plaintiff National Truck Eental Co., Inc., was, with the consent of the defendant, the operating licensee of the plaintiff Warren E. Avis until on or about April 2.7,1955, when the plaintiff Warren E. Avis, with the approval of the defendant, sold his interest in the July 16, 1954 contract to Avis Eent-A-Car System, Inc., now known as the plaintiff A. E. S. Inc. Thereafter, and until the expiration of the second contract period, the plaintiff National Truck Eental Co., Inc., was the operating licensee of Avis Eent-A-Car System, Inc.
53. There is no substantial evidence regarding the amount of the plaintiff’s business which Hertz attracted away from the plaintiffs or the amount of Hertz business which would have gone to the plaintiffs if the Hertz operations at the airport had been eliminated.
54. If the Court finds that the defendant is liable, a fair and reasonable recovery of damages would be the difference between the amount which the defendant was willing in July 1954 to receive for a nonexclusive contract (10 percent *103 of the gross receipts) and the amount actually paid to the defendant under the contract dated July 16, 1954. The gross receipts and the revenue to the defendant under the July 16, 1954 contract were $407,779.49 and $69,069.01, respectively. Subtracting 10 percent of $407,779.49 ($40,-777.95) from $69,069.01 would leave $28,291.06 for allocation among the plaintiffs, depending upon their respective interests as determined by resolution of issues of law involving the two licensee agreements with the plaintiff National Truck Eental Co., Inc., and the sale by the plaintiff Warren E. Avis of his interest in the July 16,1954, contract to Avis Rent-A-Car System, Inc.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs and the intervenor are entitled to recover, and it is therefore adjudged and ordered that plaintiffs and the intervenor recover of and from the United States the sum of fifteen thousand two hundred ninety-one dollars and six cents ($15,291.06).

 14 C.F.R. 570.84.

 United States v. Emmett Jenkins, 130 F. Supp. 808 (Jan. 27,1955).